Good morning, and may it please the Court, I'm Joshua Weiss from the Federal Public Defender's Office here on behalf of Appellant James Lindsey. With the Court's permission, I would like to reserve two minutes for rebuttal. You may do that. Thank you. The government bore the burden to prove the intended loss amount by a preponderance of the evidence. It had to show that Mr. Lindsey subjectively intended, that is, that he purposely sought the loss, as the government alleged. The government met that burden with respect to the diamonds that Mr. Lindsey intentionally removed from the mail. But there is no evidence, and the government failed to meet its burden with respect to the checks that happened to be located in those same mail parcels, but that there is no evidence Mr. Lindsey even took any notice of. Counsel, the diamonds that you're referring to were worth $90,000, and so the question is where does another $5,000 or more come from, right? And given your client's admission that he had previously stolen other diamonds and valuable jewelry, why isn't it a reasonable inference that those other diamonds and valuable jewelry would have amounted to $5,000 or more?  First of all, to draw that conclusion would be an independent fact-finding that the government never alleged below that Mr. Lindsey's statements to law enforcement about his prior mail theft was at all related to this case, or that it amounted to losses greater than amounting to $5,000, and those fact-findings were not made by the district court. I'm sorry. Go ahead, please. I was just going to say, it's in the PSR. Did he object to that paragraph 22C in the PSR as being not accurate? No, Your Honor, but the district court also did not adopt during the sentencing proceeding those portions of the PSR, and in addition, the PSR did not state nor was there any estimate about what the value of the other mail that Mr. Lindsey said he had previously stolen. So there's $5,000 in his pocket, correct? I believe it was in his backpack, Your Honor, but yes. His backpack, all right. And then there's also the picture of, on the phone, of the girlfriend with the great big rock on her finger, with no apparent ability to have acquired that legitimately. Well, Mr. Lindsey was employed by the post office, and he also had settlement money coming in from a motorcycle accident he had. So he did have legal ways of obtaining money that was talked about by the district court in its mitigation discussion. I would just point out that in the case of United States v. Thomas, this court said, if I could quote, that the fact that the district court could have made the finding is not the relevant inquiry, rather the question is whether the trial judge did make such a finding. That was at 355 F. 3rd at 1200. And was that in regard to the level of intended loss specifically? That was a drug quantity question, but it was a similar question about how many drugs could be attributed to the defendant for sentencing purposes. Here the government never made any allegations that these other alleged losses were related to this case, or with respect to the prior mail theft that Mr. Lindsey talked about, how much that was worth. Should we make a harmless error analysis or not, in your view? Your Honor, case law from the circuit makes clear that the district court's baseline calculation of the guidelines is an important starting point in every case for assessing the sentence. And so an error with respect to calculating the guidelines range is never, I don't believe is ever really considered harmless. Well, this is a rather colorful case. Am I incorrect in thinking that he sent his girlfriend a picture of both the diamonds and the money? That's correct, Your Honor. And I would note that there was no picture nor any mention of the checks, which was part of our argument that there's no indication that Mr. Lindsey ever took any notice of the checks. With respect to the money, Mr. Lindsey did send text messages with both photographs and statements about the diamonds and the money. But I would argue, Your Honor, that that is not sufficient evidence to show that the money was necessarily stolen. And again, the government never made that argument before. The district court's, you know, wasn't 100% clear on this, but the court does say that it infers that the defendant would have taken as much as he could have and would conclude that the probation department properly calculated the upward adjustment for intended loss. And then he says, including these items, usually including means, but not limited to. So why wasn't that portion of the PSR relevant? Well, Your Honor, the PSR, again, never connected Mr. Lindsey's statements about prior conduct to the loss amount here, nor did the government, nor did the district court. So I don't believe that that statement by the district court can be construed to be tying back these other statements that were never alleged to even be connected to the losses here. The district court's entitled to make findings from wherever they arise in the case, correct? Yes, Your Honor. Okay. So the picture of the $5,000, doesn't that hit the threshold? Well, I would argue, no, Your Honor, and first of all, well, directly on the question, the picture itself, again, did not show that the money was stolen. Mr. Lindsey did have legal means of obtaining money, and he was getting money from this accident settlement, specifically on top of, from his job. When you couple that with his statements to investigators that he'd been stealing mail for quite some time, why isn't the trial judge able to infer an additional $5,000 of loss? My apologies, Your Honor. No, but all right. I would note that any prior theft did not occur that day or the day before. Mr. Lindsey had been on leave the day this incident occurred. It's not that clear to me why he would be carrying cash from prior theft that had occurred days or weeks beforehand. And this is all speculation. For 32 diamonds, right? Well, the 32 diamonds were, admittedly, came from the theft that day. That's the $90,200 or whatever. So the $5,000 takes him over the threshold. But your argument seems to be that, well, there is a possible innocent explanation for this $5,000 in cash. But that really isn't the test. I think it's whether the inferences that were drawn are permissible. Yes? Well, yes, Your Honor. But again, I don't see this record as, the district court, excuse me, the guideline requires findings of the specific losses that Mr. Lindsey purposely sought to inflict. And here, the district court calculated a particular loss amount to the dollar based on two losses, the diamonds and the checks. We argue that there is no evidence that the checks were at all even noticed, let alone that Mr. Lindsey intended to profit from them. And then the question is whether these other facts in the record can be used to supplement the district court's findings. However, given that the district court did not make findings about those other potential losses, nor was there any chance for Mr. Lindsey to rebut those with factual, if there was an allegation below about those other things, then Mr. Lindsey would have had an opportunity to rebut them. So if we were to agree with your argument and return for resentencing on an open record, presumably the judge could rely on other information and still get to the 95 plus, correct? That is correct, Your Honor. That would be if there was an open record remand. And we do argue that there should be a closed record remand, again, because the government had an opportunity to make all its allegations the first time around, just as in United States versus Pridget. And it was unnoticed that its intended loss amount, its allegations, were contested by the defense. In such circumstances, as court has ordered, such as in United States versus Pridget, that the government should not be given a second bite at the apple there, especially here where Mr. Lindsey would be prejudiced by an open remand, because if this went down on an open record, Mr. Lindsey is set to be released in May of 2020. And any fact findings made a second time around would be effectively unreviewable. My apologies. I see that I'm running low on time. You can have a minute for rebuttal. Thank you very much, Your Honor. Good morning, Your Honor. Sylvie Ewald for the United States. The district court did not clearly err in making its loss calculation, and even if it did- Can you speak a little louder, please? Yes, Your Honor. The district court did not clearly err in making its loss determination below, and even if it did, that error was harmless because there are two additional grounds in the record to support that loss calculation category. I want to start by noting, in its reply brief, the defense argues that this should be de novo review. The case it cites for that proposition, United States versus Santos, applies clear error review to a very similar question, which is the valuation of checks. The government would submit that the loss is a question of fact that should be reviewed for clear error. And what is- The district court seems, although it's ambiguous, seems to have relied on the checks, the $6,500 of checks. And much of our discussion concerned the $5,000 in cash. So in your view, do we review only the $6,500, and if we determine that that's incorrect, the defendant wins, or how do we deal with that? Yes, Your Honor. While the government believes it's not clear error to have relied on those checks, case law in this circuit provides that this court may affirm the district court's decision on any basis supported by the record. Polanco and Opplinger do the same thing in very similar circumstances. They uphold the district court's application of an offense level increase, not on the basis the district court used, but on different bases in the record. The government believes that that is appropriate here. Both the $5,000 of cash that were found in the defendant's backpack, as well as his admissions that he had been stealing valuable items from the mail for months, those are both undisputed facts in the PSR. The defendant had an opportunity to object to those facts, and he did not. The district court did not- Well, the PSR didn't, as I recall it, say that the $5,000 was stolen. It did not. Okay, so he had it, and he says, well, I just earned it, or I got it from a motorcycle accident settlement or something else. Why, in your view, is there enough to charge him with the $6,500 in checks? Yes, Your Honor. I think it's a combination of the facts here. The defendant targeted the bucket of mail that he took because he knew that was going to the jewelry district. He took it. He admitted because he thought there was valuable stuff in there, and he wanted to steal it and make money from it. He'd been doing this for several months. Right, but he was basically targeting the actual jewelry. That was his desire, so the checks ... I mean, there could have been somebody's birthday card in there, too. He was targeting the actual jewelry, so how do we get to the checks? Not his route, either, as I understand it. He was stealing tubs of mail not from his route. Correct. They were not from his route. He was stealing them because they were bound for the jewelry district. Right. I understand that. He admitted not just that he'd been stealing loose diamonds and jewelry, but that he'd been stealing a variety of things. He admitted to stealing phone chargers, and I believe he referred a number of times in his interview to having stolen other items as recent as the prior week. While there is nothing specifically in the PSR about him previously having stolen checks, he does admit that he had previously stolen a variety of items. I believe the record supports the inference that both the diamonds and the checks were in his mail satchel in the front of the mail truck with him. He had not put the checks or the rifled mail back in the back of the truck. He had not brought them back to the post office. And when his home was later searched, a piece of rifled mail was found. I think all of these things together, with a focus on his admissions of his intent and his past conduct, are enough to support the district court's conclusion that he intended to take as much as he could from the mail. Do you know whether the remainder of the stolen tub was found in his truck? Yes, when the... Does the record tell us that? Yes, it's not crystal clear, but the record does provide that the case agents found some unopened pieces of mail from that tub in the back of his truck. Okay. If there are no further questions, the government will submit on its papers. Thanks. You may do that. And Mr. Weiss, you have some rebuttal time remaining. Thank you, Your Honor. I would first just point to ER page 9. I respectfully would argue that the district court was not vague or ambiguous about how it was calculating the loss. The court said that it applied an eight-level adjustment upwards for intended loss, including the diamonds, for $90,041.14 and two stolen checks in the sum of $6,500 for an eight-level increase. That was the district court's ultimate... Right. I know. The word including always gets me, though, because it's... Understood, Your Honor. But I believe that this shows that the district court made the findings based on these particular two items, and it did not make any findings with respect to these other losses. Well, except that immediately before that, the court says that it refers to the text messages and says that those allow the court to infer that he would have taken as much as he could. And one of the text messages had the $5,000 with the diamonds. So I... If I may just respond. I see I'm out of time. Yes. Thank you. The court did characterize the text messages as regarding the diamonds and did not, again, did not mention the cash anywhere in its findings. With that, I will submit. Thank you very much. Thank you. The case just argued is submitted, and once again, we appreciate very much the arguments of both counsel.
judges: Schroeder, Graber, Watson